### Joseph M. Watte v. H. Leroy Thayer.

1. PRINCIPAL AND AGENT—*When the Principal is Not Liable.*—If the principal and agent are both known to the party dealing with an agent, and exclusive credit is given to the agent, the principal will not be liable for his contracts.

**Memorandum.**—Assumpsit. In the Circuit Court ˙of Will County; the Hon. DORRANCE DIBELL, Judge, presiding. Trial by jury; verdict and judgment for defendant; appeal by plaintiff. Heard in this court at the May term, 1894, and affirmed. Opinion filed December 13, 1894.

FRANCIS A. RIDDLE and MEERS & SPRAGUE, attorneys for appellant.

C. W. BROWN, attorney for appellee.

Mr. Justice Cartwright delivered the opinion of the Court.

Appellant, who did business under the name of Elmendorf, Watte & Co., as a commission merchant on the board of trade in Chicago, brought this suit against appellee to recover losses on 75,000 bushels of oats bought by appellant in July, 1891, on orders of H. S. Carpenter & Co., of Joliet, Illinois, for them, and afterward sold at a loss amounting, with charges and expenses, to $6,106.15, claiming that appellee was the principal, undisclosed at the time of the purchase, for whom H. S. Carpenter & Co. were acting as agents, and therefore liable for the loss. Appellant was defeated on a trial in the Circuit Court.

H. S. Carpenter & Co. were grain dealers at Joliet, having several warehouses and engaged in the grain business in all its forms. They dealt in options and bought and sold grain for future as well as for immediate delivery. In their business through the board of trade they had about 300 customers in Illinois, Iowa, Missouri, Kansas and Nebraska. They had a telegraph instrument in their office at Joliet, and gave orders from there for purchases and sales. The volume of their trade was large, and they had an agreement with plaintiff by which they were to send all their business to him to be executed on the board of trade, and were to keep their account good to the closing of the market each day by the payment of a sight draft on them the following day. There was expense to be borne by them in telegraphing and keeping advised as to the market, etc., and they were to have half of the commission. In July, 1891, among other purchases and trades made by plaintiff for H. S. Carpenter & Co., he bought at various times oats, amounting to 90,000 bushels for July delivery. No other person was known in the purchase of the oats. The oats were delivered to plaintiff July 31, 1891, and notice was given to H. S. Carpenter & Co. on the same day that the oats had been taken in, paid for and insured on their account. The oats were sold out in August, 1891; 5,000 bushels on the 13th, 75,000 bushels on the 15th, and the remaining 10,000 bushels on the 20th. Statements of the purchases and sales were

sent to H. S. Carpenter & Co., showing losses with which they were charged. It is claimed in this suit that H. S. Carpenter & Co. were acting as agents of defendant as to 75,000 bushels of said oats.

In support of that claim it was proved on the trial that defendant went to Chicago, July 31, 1891, bearing a letter from H. S. Carpenter & Co. to M. Anderson, the floor trader of plaintiff, asking him to inform defendant of the news and markets, and to execute any and all orders he might give for their account; and on that occasion the defendant told Anderson and plaintiff that 75,000 bushels of the oats belonged to him. The oats were bought in lots of 5,000 bushels, and on the accounts of each purchase and sale sent to H. S. Carpenter & Co., they wrote a letter or name, putting the letter " T." to indicate defendant on those where it is claimed the transaction was for him, and writing " Huston " or " H. S. C." on the others to show what persons they were for. On the general statement they also wrote " Thayer " opposite the same lots marked with " T." H. S. Carpenter & Co. made out accounts of the several purchases and sales alleged to have been for defendant as for his account and risk, and furnished them to him. These accounts were the same as those furnished them by plaintiff with the exception that defendant was only charged with half as much commission on each transaction, so that his loss was that much less than their loss, as shown by plaintiff's statements to them. There was also evidence tending to prove that defendant afterward proposed to arbitrate with plaintiff the question whether the deliveries of the oats were regular, under the rules of the board of trade, and said that he would pay the loss if they were found regular.

On the other hand, the defendant and the surviving member of the firm of H. S. Carpenter & Co., denied that the firm acted in any sense as agents of defendant. The evidence for defendant was that H. S. Carpenter & Co. bought the oats on their own account, and sold them to defendant at the prices paid on the board of trade and the charges; that the letter or name put on accounts of purchases and sales sent them by plaintiff, indicated that they had a con-

tract with defendant and were protecting themselves by the purchase at Chicago; that the proposed arbitration was between them and plaintiff, and was for the purpose of settling a claim of defendant against them; that the deliveries were not regular so as to relieve them, because if defendant had a claim against them they had the same claim against plaintiff.

The statements and accounts in their form indicated an agency of H. S. Carpenter & Co., as commission merchants for defendant. They charged him with commissions, storage, insurance and interest, and credited him with the entire proceeds when sold. Regarded as an agency, it was rather a singular one, as they only charged him with one-half of the commission, and had to allow that to plaintiff, and lost their expenses and their half of commissions, doing the business for nothing and at their own expense; but it would be equally remarkable that they should buy oats and sell them to him on that basis. No doubt H. S. Carpenter & Co. understood that they were to be treated by plaintiff as principals, and so regarded themselves in all their dealings with him; but, however they or the defendant may have regarded the relations of the parties, or whatever name they might give them, it appears that the firm was in fact acting for defendant in buying the oats.

In the arrangement between plaintiff and H. S. Carpenter & Co., and in the course of their dealings, it was understood that the firm were not only dealing on their own account, but that in some way they were doing business for other persons. So far as these oats were concerned, it was not known by plaintiff, up to July 31, 1891, in what capacity they had been ordered by H. S. Carpenter & Co., but on that day he learned that defendant claimed that the deal was his, and that H. S. Carpenter & Co. delivered the oats through plaintiff. After receiving the oats on that day, plaintiff sent the notice before mentioned to H. S. Carpenter & Co. that the oats had been taken in, paid for and insured on their account. Afterward, when arbitration was proposed, for the settlement of the question whether plaintiff was en-

titled to payment of the loss on account of alleged non-
delivery, plaintiff refused to recognize defendant in the trans-
action, writing and telegraphing H. S. Carpenter & Co. that
he would arbitrate with them, but not defendant; that he
had no trade with defendant and never did have, and that
the trade was with them.   So far as plaintiff was concerned,
the defendant was not recognized in the attempted arbitra-
tion.   All the facts, and the names and credit of the parties
were before plaintiff, and we think that his refusal to rec-
ognize defendant as interested in his claim, and his insist-
ance that the trade was with H. S. Carpenter & Co. alone,
and not with defendant, justified a finding that he elected to
give exclusive credit to that firm.   Such an election, with
full knowledge, would relieve the defendant from liability.
Story on Agency, Sec. 447.

Defendant paid H. S. Carpenter & Co. for the oats.   He kept
margins with them to the market value.   He had between
five thousand and six thousand dollars in their hands, August
1, 1891.   He paid them $1,500 on that day, and had ample
funds with them to cover losses.   That firm had $13,053.02
in plaintiff's hands to protect their various trades at the
close of business July 31st, and from that time to August
20th, when the last oats were sold, they paid him $4,000.
Their deposit was reduced by charges so that on August
20th there was a balance of $176.52 due plaintiff without
crediting them with one half of the commission to which
they were entitled, and which would balance the account.
Plaintiff's attempt was to give defendant no credit for
moneys sent by H. S. Carpenter & Co., although he had
funds in their hands for that purpose, but to credit such
moneys upon other trades in rye and corn, afterward closed
at a loss, and hold defendant responsible for this loss.   If
plaintiff should recover according to his claim he would owe
H. S. Carpenter & Co. a balance.   If defendant could be
held liable for the contract of his agents, we are unable to
see why he should not have the benefit of payments made
by them, and in that event there would be nothing due from
him.   But we think that he was not liable on the ground

that plaintiff, with full knowledge of the facts, elected to give exclusive credit to H. S. Carpenter & Co. There are some questions raised about the instructions, but we do not regard them as important or requiring special comment. The judgment will be affirmed.